UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT A. GIBBS,

          Plaintiff,

    v.

J. WEBB, et al.,

          Defendants.

No. 2:18-cv-2817 JAM DB P

ORDER

Plaintiff, a former pretrial detainee proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983, together with an application to proceed in forma pauperis. Because plaintiff has made the required showing to proceed in forma pauperis, the application will be granted. Plaintiff's complaint is now before the Court for screening.

**I.**    **Screening Requirements**

"[T]he court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). This provision applies to all actions filed in forma pauperis, whether or not the plaintiff is incarcerated. See Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000); see also Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (per curiam).

////

1

## II. Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." <u>Wilder v. Virginia Hosp. Ass'n</u>, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Ketchum v. Alameda Cnty.</u>, 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Id.</u> Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. <u>Id.</u> at 677-78.

## III. Plaintiff's Allegations

At all times relevant to this action, Plaintiff was a pretrial detainee housed at Shasta County Jail ("SCJ") in Redding, California. Plaintiff's caption and complaint identifies the following Defendants: the California Forensic Medical Group ("CFMG"), Shasta County, Shasta County Sheriff Tom Basenko, Captain Dave Kent, Deputy J. Webb, Deputy C. Barnhart, Sergeant C. Reed, and Sergeant B. Rodgers. Other than CFMG and Shasta County, each Defendant is sued in his or her individual and official capacities. Plaintiff seeks injunctive relief and damages.

////

Plaintiff's allegations may be fairly summarized as follows:

On September 28, 2017, Plaintiff and Defendant Webb had a verbal dispute regarding the conditions at SCJ and the mistreatment of prisoners. Webb became agitated and threatened to shoot Plaintiff.

Less than two hours later, Defendants Webb and Barnhart were picking up breakfast trays, but Plaintiff refused to hand his over until Webb provided him with an inmate grievance form. Webb refused. Instead, he called Barnhart over to assist him; they both entered Plaintiff's cell; Webb directed Plaintiff to sit on his bunk, which Plaintiff did; and Webb choked and assaulted Plaintiff without provocation or any resistance from Plaintiff. Barnhart stood near Webb and witnessed the assault but did nothing to stop it. Later, Webb and Barnhart drafted false reports accusing Plaintiff of being aggressive and of initiating the assault.[1]

Following this assault, Plaintiff was taken to medical in handcuffs. The unidentified deputies who transported Plaintiff did so "very roughly" and then sat on him as he laid face down. This resulted in a large facial contusion and cuts on Plaintiff's wrists from the handcuffs.

At medical, Plaintiff told the examining nurse, Barbara Littleton, that Webb hit him, but Littleton did not report the incident and tried to minimize Plaintiff's injuries. Per Plaintiff, "CFMG personnel are not properly trained and/or are too intimidated by deputees [sic] to report any incidents of assault by deputees [sic]."

When Plaintiff returned to his cell, he told multiple officers that he wanted to report an assault, but none would allow him. Plaintiff also wrote several grievances and spoke to several deputies about making a police report to no avail. He also claims that Defendants Reed and Rodgers "were asked on [Plaintiff's] behalf to allow [him] to make a police report and the request was denied."

Plaintiff claims there is a custom at SJC of excessive force and abuse, that Sheriff Bosenko is aware of it, and that none of the supervising Defendants (Reed, Rodgers, South, Tanner, Marlar, and Kent) properly supervise their deputies.

---

[1] The complaint suggests that criminal charges were filed against Plaintiff in Shasta Superior Court related to this assault. The Court's examination of the state court docket in People v. Gibbs, Case No. MC RD CR-F-18-0007043-002, reveals that the case was dismissed in November 2018.

Plaintiff also claims that "deputees and corrections sargeants [sic] went on to file a false criminal complaint in retaliation, placed me on 'chain-all movement' status in retaliation, allowed several other deputees [sic] to retaliate with invidious 'disciplinary' reports and continued to make threats against me."

## IV.    Discussion

### A.    Private v. Public Actors

Plaintiff has named CFMG in this civil rights action even though it is ostensibly a private actor. To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir.2006). Generally, private parties are not acting under color of state law. Brentwood Academy v. Tennessee Secondary School Athletic Assoc., 531 U.S. 288, 295 (2001); Single Moms, Inc. v. Montana Power Co., 331 F.3d 743, 746-47 (9th Cir. 2003); Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 835 (9th Cir. 1999); Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991). However, private parties under contract with the government may be held liable under section 1983. Brentwood Academy, 531 U.S. at 295-96.

Considering notice pleading standards, Plaintiff's allegation that the CFMG is a medical contractor at the jail is sufficient to allow Plaintiff to bring suit under section 1983 against it as if it is a local government unit and against its employees.

### B.    Monell Liability

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001). "Persons" who may be sued under Section 1983 are state and local officials sued in their individual capacities, private individuals and entities which act under color of state law, and/or the local governmental entity itself. Vance v. Cty. of Santa Clara, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996). Departments of municipal entities, however, are not "persons" subject to suit under Section 1983 and, therefore, a local law enforcement department is not a proper party. Vance, 928 F. Supp. at 996 ("Naming a municipal department as a

4

1  defendant is not an appropriate means of pleading a § 1983 action against a municipality.")

2  (citation omitted); <u>Powell v. Cook Cty. Jail</u>, 814 F. Supp. 757, 758 (N.D. Ill. 1993) ("Section

3  1983 imposes liability on any 'person' who violates someone's constitutional rights 'under color

4  of law.' Cook County Jail is not a 'person.'").

5       A county jail or a local police department is not a "person" subject to suit under Section

6  1983. <u>See e.g.</u>, <u>United States v. Kama</u>, 394 F.3d 1236, 1239 (9th Cir. 2005) ("[M]unicipal police

7  departments and bureaus are generally not considered 'persons' within the meaning of section

8  1983."); <u>Rodriguez v. Cty. of Contra Costa</u>, 2013 WL 5946112 at *3 (N.D. Cal. Nov. 5, 2013)

9  (citing <u>Hervey v. Estes</u>, 65 F.3d 784, 791 (9th Cir. 1995)) ("Although municipalities, such as

10  cities and counties, are amenable to suit under <u>Monell [v. Dep't of Social Servs.</u>, 436 U.S. 658

11  (1978)], sub-departments or bureaus of municipalities, such as the police departments, are not

12  generally considered "persons" within the meaning of § 1983."); <u>Nelson v. Cty. of Sacramento</u>,

13  926 F. Supp. 2d 1159, 1170 (E.D. Cal. 2013) (dismissing Sacramento Sheriff's Department from

14  section 1983 action "with prejudice" because it "is a subdivision of a local government entity,"

15  i.e., Sacramento County).

16       A local government is liable for an injury under § 1983 under three possible theories. <u>See</u>

17  <u>Clouthier v. County of Contra Costa</u>, 591 F.3d 1232, 1249 (9th Cir. 2010), overruled on other

18  grounds by <u>Castro v. Cty. of Los Angeles</u>, 833 F.3d 1060 (9th Cir. 2016) (<u>en banc</u>)). First, a local

19  government may be liable if "execution of a government's policy or custom, whether made by its

20  lawmakers or by those whose edicts or acts may fairly be said to represent official policy,

21  inflict[ed] the injury." <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 694

22  (1978). Second, a local government can fail to train employees in a manner that amounts to

23  "deliberate indifference" to a constitutional right, such that "the need for more or different

24  training is so obvious, and the inadequacy so likely to result in the violation of constitutional

25  rights, that the policymakers of the city can reasonably be said to have been deliberately

26  indifferent to the need." <u>City of Canton v. Harris</u>, 489 U.S. 378, 390 (1989). Third, a local

27  government may be held liable if "the individual who committed the constitutional tort was an

28  official with final policy-making authority or such an official ratified a subordinate's

unconstitutional decision or action and the basis for it." <u>Gravelet-Blondin v. Shelton</u>, 728 F.3d 1086, 1097 (9th Cir. 2013) (internal quotation marks and citation omitted).

Plaintiff's allegations against CFMG and Shasta County are too vague and conclusory to state a claim. As to CFMG, Plaintiff alleges only that its "personnel are not properly trained and/or are too intimidated by deputees [sic] to report any incidents of assault by deputees [sic]." However, Plaintiff fails to allege sufficient facts to impose liability under any of the three theories identified <u>supra</u>, namely, that CFMG has a practice of underreporting incidents of assault, that it is deliberately indifferent to inmates' constitutional rights, or that the nurse who is alleged to have underreported Plaintiff's injuries had final policy-making authority. As for Shasta County, Plaintiff asserts no allegations against it at all.

Accordingly, Plaintiff fails to state a claim against either entity.

**C.      Linkage**

The Court now turns to the individual Defendants. Under § 1983, the plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. <u>Iqbal</u>, 556 U.S. at 676-77 <u>Simmons v. Navajo County</u>, 609 F.3d 1011, 1020-21 (9th Cir. 2010); <u>Ewing v. City of Stockton</u>, 588 F.3d 1218, 1235 (9th Cir. 2009). Liability may not be imposed on supervisory personnel under the theory of *respondeat superior*. <u>Iqbal</u>, 556 U.S. at 676-77. Supervisory personnel may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989); <u>accord</u> <u>Starr v. Baca</u>, 652 F.3d 1202, 1205-08 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012).

Plaintiff has not alleged any plausible facts indicating that Sheriff Basenko or Captain Kent or any of the other supervisory defendants personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989). Plaintiff's allegation that these Defendants knew of but failed to correct the conduct of their subordinates is too vague and conclusory to proceed.

Similarly, Plaintiff's allegations that "deputies and corrections sargeants [sic] went on to file a false criminal complaint in retaliation, placed me on 'chain-all movement' status in retaliation, allowed several other deputies [sic] to retaliate with invidious 'disciplinary' reports and continued to make threats against me" must be dismissed as vague and conclusory and for failure to properly link to any named Defendant.

### D. Fourteenth Amendment Due Process

Plaintiff accuses Webb and Barnhart, as well as several other unidentified staff members, of falsifying incident reports following the assault, which led to criminal charges being brought against Plaintiff. Generally, the issuance of a false charge does not, in and of itself, support a claim under § 1983. See Ellis v. Foulk, 2014 WL 4676530, at *2 (E.D. Cal. Sept. 18, 2014) ("Plaintiff's protection from the arbitrary action of prison officials lies in 'the procedural due process requirements as set forth in Wolff v. McDonnell.") (citing Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984); Solomon v. Meyer, 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014) ("[T]here is no constitutionally protected right to be free from false disciplinary charges.").

Therefore, the mere falsification of an incident report does not state a cognizable constitutional claim. But even assuming that Plaintiff has a liberty interest in being free of false charges, there is no allegation that he was placed in segregation as a result of the charges or that he was found guilty of the charge without the requisite process. Additionally, he Court's examination of the state court's docket suggests that the charges against him were dismissed one month after they were filed.

Accordingly, on the facts alleged, Plaintiff has not stated a due process claim.

### E. First Amendment Retaliation

The fundamentals of a retaliation claim are easily summarized: "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citing Resnick v. Hayes, 213 F.3d

443, 449 (9th Cir. 2000)). It is the plaintiff's burden to prove each of these elements. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

Under the first element, plaintiff need not prove that the alleged retaliatory action, in and of itself, violated a constitutional right. Id. (to prevail on a retaliation claim, plaintiff need not "establish an independent constitutional interest" was violated); see also Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997) (upholding jury determination of retaliation based on filing of a false rules violation report); Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985) (transfer of prisoner to a different prison constituted adverse action for purposes of retaliation claim). The interest cognizable in a retaliation claim is the right to be free of conditions that would not have been imposed but for the alleged retaliatory motive.

To prove the second element – retaliatory motive – plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. Brodheim v. Cry, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. See McCollum v. CDCR, 647 F.3d 870, 882–83 (9th Cir. 2011); accord Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. McCollum, 647 F.3d at 882.

The third element concerns a prisoner's First Amendment right to access the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). While prisoners have no freestanding right to a prison grievance process, see Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system." Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. Rhodes, 408 F.3d at 567–68. Protected speech

8

also includes an inmate's statement of intent to pursue an administrative grievance or civil litigation. Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012); Rhodes, 408 F.3d at 567; Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Under the fourth element, plaintiff need not demonstrate a "total chilling of his First Amendment rights," only that defendant's challenged conduct "would chill or silence a person of ordinary firmness from future First Amendment activities." Rhodes, 408 F.3d at 568–69 (citation and internal quotation marks omitted). Moreover, direct and tangible harm will support a retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights. Id. at 568 n.11. "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" as a retaliatory adverse action. Brodheim, 584 F.3d at 1269 (citing Rhodes, 408 F.3d at 568 n.11).

Regarding the fifth element, the Ninth Circuit has held that preserving institutional order, discipline, and security are legitimate penological goals that, if they provide the motivation for an official act taken, will defeat a claim of retaliation. Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994); Rizzo, 778 F.2d at 532. When considering this final factor, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). Plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for defendant's challenged conduct. Pratt, 65 F.3d at 806. A plaintiff must prove that the alleged retaliatory motive was the but-for cause of the challenged actions. Hartman v. Moore, 547 U.S. 250, 260 (2006).

Plaintiff's allegations are sufficient to proceed on a retaliation claim against Defendant Webb, who is accused of threatening and then severely assaulting Plaintiff without provocation after Plaintiff requested an inmate grievance form to complain about conditions at SJC.

F.     Fourteenth Amendment Excessive Force

Pretrial detainees are afforded greater protection under the constitution than prisoners. Stone v. City of San Francisco, 968 F.2d 850, 857 n.10 (9th Cir. 1992). A pretrial detainee's right to be free from excessive force comes from the Due Process Clause of the Fourteenth

9

Amendment and not the Eighth Amendment. <u>Kingsley v. Hendrickson</u>, 135 S. Ct. 2466, 2473 (2015). Unless the plaintiff demonstrates that the defendant intended to punish the inmate, conditions or restrictions that are reasonably related to legitimate penological objectives do not violate pretrial detainees' right to be free from punishment. See <u>Block v. Rutherford</u>, 468 U.S. 576, 584 (1984). Pretrial detainees must show that the defendant purposely or knowingly used objectively unreasonable force. <u>Kingsley</u>, 135 S. Ct. at 2473. Plaintiff accuses Defendant Webb of severely assaulting him without provocation and without resistance.

Because the allegations suggest that there was no legitimate penological objective for the assault, the allegations are sufficient to state a Fourteenth Amendment excessive force claim.

**G.     Fourteenth Amendment Failure to Protect**

Plaintiff also accuses Defendant Barnhart of entering the cell with Webb, witnessing the assault, and failing to intervene. "[T]he elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer are: (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries." <u>Castro v. City of Los Angeles</u>, 833 F.3d 1060, 1071 (9th Cir. 2016).

Liberally construing the complaint, the Court finds that Plaintiff's allegations state a failure to protect claim against Defendant Barnhart.

**H.     Access to Court**

Further liberally construing the complaint, the Court finds that Plaintiff may have intended to assert an access to court claim by alleging that he was denied an opportunity to file a grievance and a police report following the assault.

The First Amendment guarantees the right to "petition the Government for a redress of grievances." U.S. Const. amend. I. "It is well settled that the right to access to the courts is

subsumed within the right to petition." <u>Laws v. City of Seattle</u>, 2009 WL 3836122, at *3 (W.D. Wash. Nov. 12, 2009) (citing <u>Bill Johnson's Rests., Inc. v. Nat'l Labor Relations Bd.</u>, 461 U.S. 731, 741 (1983)). This right of access to courts is also guaranteed to individuals who are detained pursuant to civil commitment. <u>Cornett v. Donovan</u>, 51 F.3d 894, 897 (9th Cir. 1995), as amended (May 23, 1995) (citing <u>King v. Atiyeh</u>, 814 F.2d 565, 568 n. 2 (9th Cir. 1987)). A prisoner or detainee's right to litigate without active interference under the First Amendment applies to all "claims that have a reasonable basis in law or fact." <u>Silva v. Di Vittorio</u>, 658 F.3d 1090, 1103 (9th Cir. 2011) (citations and internal quotations omitted). The Supreme Court has held that a prisoner or detainee must demonstrate that he lost access to a past, present, or potential opportunity for litigation, and the actions of prison officials actively led to the denial of access. <u>See</u> <u>Christopher v. Harbury</u>, 536 U.S. 403, 414-15 (2002). Though this right does not require officials to actively assist with a prisoner's filings, it prohibits officials from erecting barriers which are intended to "impede the right of access of incarcerated persons." <u>Id.</u> at 1102-03 (citations and internal quotations omitted). A detainee arguing his right to access the courts has been violated must also demonstrate an actual injury. <u>Lewis</u>, 518 U.S. at 349; <u>Madrid v. Gomez</u>, 190 F.3d 990, 996 (9th Cir. 1999). To show actual injury, plaintiff must demonstrate that he suffered "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." <u>Lewis</u>, 518 U.S. at 348. Mere negligence is not sufficient to establish an unconstitutional denial of access to the courts. <u>See</u> <u>Stevenson v. Koskey</u>, 877 F.2d 1435, 1441 (9th Cir. 1989).

Plaintiff's access to court claim fails for three reasons. First, Plaintiff's general allegation that multiple officers denied him the opportunity to report an assault is insufficient because he does not identify any of these individuals or include details regarding the circumstances of their alleged denial. Second, while he claims that Defendants Reed and Rodgers "were asked on [Plaintiff's] behalf to allow [him] to make a police report and the request was denied," these allegations are too vague and conclusory to proceed against these Defendants. Third, Plaintiff has not alleged actual injury—in other words, there is no allegation that he was actually prejudiced

with respect to contemplated litigation. For these reasons, Plaintiff fails to state an access to court claim.

**V.      Conclusion**

Plaintiff's complaint states the following claims for relief: (1) a First Amendment retaliation claim against Webb; (2) a Fourteenth Amendment excessive force claim against Webb; and (3) a Fourteenth Amendment failure to protect claim against Barnhart. None of the other claims are cognizable as plead.

Plaintiff will be granted an opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff does not wish to amend, he may instead file a notice of voluntary dismissal, and the action then will be terminated by operation of law. Fed. R. Civ. P. 41(a)(1)(A)(i). Alternatively, Plaintiff may forego amendment and notify the Court that he wishes to stand on his complaint. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may elect to forego amendment). If the last option is chosen, the undersigned will issue findings and recommendations to dismiss the complaint without leave to amend, Plaintiff will have an opportunity to object, and the matter will be decided by a District Judge.

If Plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff should note that although he has been granted the opportunity to amend his complaint, it is not for the purposes of adding new and unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully review this screening order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves a function in the case. Id. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly titled, in

bold font, "First Amended Complaint," reference the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." <u>Twombly</u>, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's motion to proceed in forma pauperis (ECF No. 9) is granted;

2. Within thirty (30) days from the date of service of this order, Plaintiff must file either a first amended complaint curing the deficiencies identified by the Court in this order, a notice of voluntary dismissal, or a notice of election to stand on the complaint; and

3. If Plaintiff fails to file a first amended complaint or notice of voluntary dismissal, the Court will recommend the action be dismissed, with prejudice, for failure to obey a court order and failure to state a claim.

Dated:  July 2, 2019

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/DLB7;
DB/Inbox/Substantive/gibb2707.scrn