UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT A. GIBBS, | No. 2:18-cv-2817 JAM DB P |
| Plaintiff, | |
| v. | ORDER |
| J. WEBB, et al., | |
| Defendants. | |

Plaintiff, a state prisoner proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's original complaint was screened and found to state the following claims for relief: (1) a First Amendment retaliation claim against Deputy J. Webb; (2) a Fourteenth Amendment excessive force claim against Deputy Webb; and (3) a Fourteenth Amendment failure to protect claim against Deputy C. Barnhart. (ECF No. 10.) No other claims were cognizable as plead. Plaintiff was then directed to file a notice as to whether he wished to proceed on the complaint as screened or to file an amended complaint. Plaintiff has chosen to file an amended complaint, which is now before the Court for screening. (ECF No. 13.)

**I.  Screening Requirements**

"[T]he court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §

1915(e)(2)(B)(i)–(iii). This provision applies to all actions filed in forma pauperis, whether or not the plaintiff is incarcerated. See Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000); see also Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (per curiam).

**II.     Pleading Standard**

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

**III.    Plaintiff's Allegations**

At all times relevant to this action, plaintiff was a pretrial detainee housed at Shasta County Jail ("SCJ") in Redding, California. Plaintiff identifies the following individuals as defendants, each of whom is named in his official and individual capacity: Shasta County Sheriff Tom Basenko, Captain Dave Kent, Deputy J. Webb, Deputy C. Barnhart, Sergeant C. Reed, and Sergeant B. Rodgers. In addition, plaintiff names two entity defendants, the California Forensic

Medical Group ("CFMG") and Shasta County. Plaintiff does not specify what form of relief he seeks.

Plaintiff's allegations may be fairly summarized as follows:

**A. General Allegations**

Plaintiff was housed as a pretrial detainee at SCJ from September 2015 through November 2018. During that time, plaintiff was regularly denied access to grievance forms and had grievances uniformly denied at all levels by jail staff and administrators. Jail staff would make dismissive comments about the forms, including that they were not a right but a privilege, they were intended for the shredder or to "wip[e] asses with," etc.

Plaintiff and other inmates informed jail administrators of problems related to the grievance system through grievances, letters, petitions, and verbal complaints. No official action was taken to correct these issues. In fact, jail administrators—especially Sergeant Reed, Sergeant Rodgers, and Captain Kent—encouraged the systematic denial of a meaningful grievance system by making the same sort of derogatory remarks about grievances that jail staff would make, threatening to suspend or deny grievance forms altogether, threatening disciplinary action for filing grievances, and instituting policies deliberately designed to severely limit the number of grievance forms that could be obtained or filed.

Plaintiff claims that Shasta County and supervisors at the Sheriff's Department have a "policy" that is intended to protect supervisors from liability by limiting their involvement in and presence during the actions of jail deputies. He accuses Sheriff Bosenko of being "regularly and deliberately negligent in supervising jail staff" and of delegating "all jail supervisory duties to Captain Dave Kent, who in turn was rarely in the jail, performed little or no supervision of inmates or jail staff and left most of the supervisory duties to [Sergeants] Chase Reed and Brian Rodgers." These sergeants are then accused of rarely leaving their offices, effectively leaving the jail deputies unsupervised at SCJ.

In addition to the "policy" of distancing the supervisors from complaints by inmates, plaintiff claims that the grievance procedure itself fails to provide oversight of the deputies' conduct. Instead, supervisors fail to meaningfully investigate or even respond to grievances,

except to deny that any misconduct occurred. Witnesses are rarely, if ever, interviewed; deputies accused of misconduct simply deny the misconduct; and deputies routinely "investigate" each other and make false statements to protect one another. Plaintiff's letters and grievances that he forwarded to Sheriff Bosenko are simply referred back to sergeants and lieutenants within the jail.

As for Shasta County, plaintiff claims it "has a duty to protect the rights of people held in [its] jail" and "was consistently negligent in supervising [its] sheriffs dept. [and] [its] sheriff."

**B. The September 28, 2017 Assault**

On September 28, 2017, plaintiff verbally complained to jail deputies about the conditions in SCJ, including incidents of excessive force and abuse of inmates. Over the course of several hours, plaintiff asked Deputies Webb and Barnhart for a grievance form to submit his complaints on paper, but they ignored him, made derogatory remarks, and denied him the form. At one point, Deputy Webb became extremely agitated and threatened to shoot plaintiff.

Shortly thereafter, plaintiff refused to hand back his breakfast tray to Deputy Webb as protest for the denial of a grievance form. Deputy Webb and Deputy Barnhart entered plaintiff's cell and instructed him to sit on his bed, which plaintiff immediately did. Deputy Webb then approached plaintiff and began screaming at him, saying "I don't have to give you shit!" and "You don't have any rights!" Plaintiff argued back but was careful to keep his hands on his lap, and he made no sudden moves or any movement towards the deputies. Nonetheless, Deputy Webb began to choke and assault plaintiff, causing a broken nose and two black eyes. Deputy Barnhart watched this assault but failed to intervene. Deputy Webb then told plaintiff to roll over on his stomach. When plaintiff complied, Deputy Webb and Deputy Barnhart both jumped on plaintiff to handcuff him to take to medical.

At medical, plaintiff, who was bleeding profusely, was roughly thrown to the ground, and several unnamed deputies sat on his legs, back, and head. Plaintiff yelled to Nurse Littleton that he wasn't resisting, that he had been assaulted, and that the deputies who were sitting on him were hurting him. Nurse Littleton, however, noted only that plaintiff's nose was not broken (an x-ray taken the next day revealed that it was) and sent plaintiff back to his cell where plaintiff bled for several more hours. According to plaintiff, Nurse Littleton's minimization of his injuries is

1  consistent with a pattern and practice of CFMG nurses who provides medical care at SCJ.
2  Specifically, nurses have told plaintiff several times during his period of detention that they do
3  not involve themselves in incidents at the jail because they are too intimidated by the jail deputies
4  or their own CFMG supervisors.
5  Following his return to his cell, plaintiff asked jail deputies multiple times for an
6  opportunity to file a police report with the Redding Police. The deputies declined, citing
7  instruction from Sergeant Reed and Sergeant Rodgers.

**C. Referral to the District Attorney**

Deputy Webb and Deputy Barnhart drafted two reports after the incident. The first, an in-house disciplinary report, accused plaintiff of resisting them. The second report, which was drafted 48 hours later, changed and omitted details from the first report; it was used to refer plaintiff to the district attorney for criminal charges for Resisting Executive Officers.

Plaintiff wrote a letter to the district attorney disputing the contents of the deputies' report. He also attached ten declarations from other inmates in support of his claim that Deputy Webb assaulted him without provocation and threatened to shoot him.

Eventually, the district attorney charged plaintiff with resisting the officers. Plaintiff claims this was done to coerce him into a plea agreement on the other charges that he had been fighting for the three years that he was detained at SCJ.

Because he spoke out about the incident, "many jail deput[i]es and supervisors" retaliated against plaintiff by placing him on "chain all movement" for approximately ten months. Plaintiff also suggests that jail staff retaliated against him by charging him with undeserved disciplinary violations, but plaintiff does not elaborate on the circumstances underlying these charges. He also does not name any of the jail staff who allegedly retaliated against him.

////
////
////
////
////

**IV.     Discussion**

    **A.     <u>Monell</u> Liability**

The Court turns first to plaintiff's claim against Shasta County and CFMG[1]. "Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1074 (9th Cir. 2001). "Persons" who may be sued under Section 1983 are state and local officials sued in their individual capacities, private individuals and entities which act under color of state law, and/or the local governmental entity itself. <u>Vance v. Cty. of Santa Clara</u>, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996).

A local government is liable for an injury under § 1983 under three possible theories. <u>See</u> <u>Clouthier v. County of Contra Costa</u>, 591 F.3d 1232, 1249 (9th Cir. 2010), overruled on other grounds by <u>Castro v. Cty. of Los Angeles</u>, 833 F.3d 1060 (9th Cir. 2016) (*en banc*)). First, a local government may be liable if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 694 (1978). Second, a local government can fail to train employees in a manner that amounts to "deliberate indifference" to a constitutional right, such that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." <u>City of Canton v. Harris</u>, 489 U.S. 378, 390 (1989). Third, a local

---

[1] CFMG is named in this civil rights action even though it is ostensibly a private actor. To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir.2006). Generally, private parties are not acting under color of state law. <u>Brentwood Academy v. Tennessee Secondary School Athletic Assoc.</u>, 531 U.S. 288, 295 (2001); <u>Single Moms, Inc. v. Montana Power Co.</u>, 331 F.3d 743, 746-47 (9th Cir. 2003); <u>Sutton v. Providence St. Joseph Med. Ctr.</u>, 192 F.3d 826, 835 (9th Cir. 1999); <u>Price v. Hawaii</u>, 939 F.2d 702, 707-08 (9th Cir. 1991). However, private parties under contract with the government may be held liable under section 1983. <u>Brentwood Academy</u>, 531 U.S. at 295-96. Considering notice pleading standards, plaintiff's allegation that the CFMG is a medical contractor at the jail is sufficient allow him to bring suit under section 1983 against it as if it is a local government unit.

government may be held liable if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1097 (9th Cir. 2013) (internal quotation marks and citation omitted).

### 1. Shasta County

Plaintiff seeks to impose liability on Shasta County for its alleged policy of inaction in the fact of persistent abuses of the grievance system at SCJ. "Under Monell, a local government body can be held liable under § 1983 for policies of inaction as well as policies of action." Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014), cert. denied, — U.S. ——, 135 S. Ct. 980 (2015). "A policy of action is one in which the government body itself violates someone's constitutional rights, or instructs its employees to do so; a policy of inaction is based on a government body's 'failure to implement procedural safeguards to prevent constitutional violations.'" Id. at 763 (citations omitted). In inaction cases, "the plaintiff must show, first, that the policy amounts to deliberate indifference to the plaintiff's constitutional right. This requires showing that the defendant was on actual or constructive notice that its omission would likely result in a constitutional violation." Id. (internal quotation marks, citations, and alterations omitted). Second, the plaintiff must show that the policy caused the violation in the sense that the municipality could have prevented the violation with an appropriate policy." Id. (internal quotation marks, citations, and alterations omitted).

Plaintiff's contention that Shasta County is liable for its failure to supervise the Sheriff's Department and its employees states a claim only insofar as it is based on the jail staff's refusal to provide grievance forms or their threats and other retaliatory conduct when inmates and detainees ask for the forms. Plaintiff claims that he has written about these problems to Sheriff Bosenko, the Shasta County Attorney, and the Board of Supervisors, and supervisory jail staff. Because of the prevalence of the conduct and plaintiff's own letters informing it of the problems, Shasta County knew or should have known about the issues involving the deputies and the grievance system at SCJ. By failing to supervise the Sheriff and the deputies, Shasta County has pursued a policy of inaction resulting in its deliberate indifference to the continued violation of the First and

Fourteenth Amendment rights of SCJ inmates, including plaintiff. This claim is therefore cognizable against Shasta County.

However, any allegation that the grievance system was abused through inadequate investigations and the like does not state a claim. In adopting prison regulations, "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). However, there is no constitutional right to a prison grievance system. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Stewart v. Block, 938 F. Supp. 582 (C.D. Cal. 1996); Hoover v. Watson, 886 F. Supp. 410 (D. Del. 1995) (aff'd, 74 F.3d 1226). If the state elects to provide a grievance mechanism, alleged violations of the procedures do not give rise to § 1983 claims. Silva v. Gregoire, 2007 WL 1814073 at *6 (W.D. Wash. 2007); Hoover v. Watson, 886 F. Supp. 410, 418 (D. Del. 1995) (aff'd, 74 F.3d 1226); Brown v. Dodson, 863 F. Supp. 284, 285 (W.D. Va. 1994); Allen v. Wood, 970 F. Supp. 824, 832 (E.D. Wash. 1997) (The grievance process is an internal prison process for handling prison complaints and does not involve substantive rights).

For this reason, any attempt to impose liability on Shasta County for the jail staff's failure to comply with prison regulations in the processing and investigation of inmate grievances does not state a claim.

### 2. CFMG

CFMG is accused of having a policy of "turning a blind eye to incidents of excessive force" by underreporting or not reporting inmates' injuries when they are caused by SCJ deputies. This policy results in, inter alia, the failure to properly treat inmates' injuries, as in the case of plaintiff's broken nose. These allegations are sufficient to proceed against CFMG.

### C. Official v. Individual Capacity Claims

The Eleventh Amendment bars suits for money damages in federal court against state officials in their official capacity. Aholelei v. Department of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). However, it does not bar official capacity suit for prospective relief, Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010); nor does it bar suit for damages against state

8

officials in their personal capacities. Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003).

"Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." Hafer, 502 U.S. at 25; Suever v. Connell, 579 F.3d 1047, 1060-61 (9th Cir. 2009). Where a plaintiff is seeking damages against a state official and the complaint is silent as to capacity, a personal capacity suit is presumed given the bar against an official capacity suit. Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1994); Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1991).

A claim for prospective injunctive relief against a state official in his official capacity is not barred by the Eleventh Amendment provided the official has authority to implement the requested relief. Will v. Michigan Dept. of State Police, 491 U.S. 58, 92 (1989); accord Rouser v. White, 707 F. Supp. 2d 1055, 1066 (E.D. Cal. 2010) (proper defendant for injunctive relief in suit seeking implementation of CDCR policy is the CDCR Secretary in his official capacity).

Plaintiff names each of the non-entity defendants in their official and individual capacities. He does not, however, specify the form of relief that he seeks. Assuming he seeks damages, he may only pursue that through individual capacity claims against these defendants. Should he seek some form of prospective injunctive relief, that relief may only be provided through the official capacity claims.

Furthermore, depending on the injunctive relief sought, some, if not all, of the official capacity claims may be subject to dismissal as duplicative. Vance v. Cty. of Santa Clara, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("[I]f individuals are being sued in their official capacity as municipal officials and the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed.").

**C.     Supervisory Liability**

"A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir.1989)); see

9

also Larez v. City of Los Angeles, 946 F.2d 630, 645 (9th Cir. 1991) (noting that whether a supervisor in his individual capacity is liable for a failure to supervise "hinges upon his participation in the deprivation of constitutional rights"). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Starr, 652 F.3d at 1208 (quoting Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998)). If a subordinate has committed a constitutional violation, the liability of a supervisor "depends upon whether he set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." Blankenhorn v. City of Orange, 485 F.3d 463, 485 (9th Cir. 2007) (internal quotation marks omitted) (quoting Watkins, 145 F.3d at 1093).

Plaintiff's allegations against Sheriff Bosenko, Captain Kent, Sergeant Reed, and Sergeant Rodgers state a claim under the theory of supervisory liability. He alleges that, through direct communication from plaintiff himself, these defendants were aware of the severe problems with the grievance process and either personally participated in the conduct or failed to act, thereby refusing to terminate the actions of their subordinates that would inflict constitutional injury.

**D. First Amendment**

    **1. Retaliation**

The fundamentals of a retaliation claim are easily summarized: "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citing Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000)). It is the plaintiff's burden to prove each of these elements. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

Plaintiff properly alleges a retaliation claim against Deputy Webb, who is accused of threatening and then severely assaulting plaintiff without provocation after plaintiff requested an inmate grievance form to complain about conditions at SCJ. Similarly, plaintiff's claim that jail administrators (namely, Sergeant Reed, Sergeant Rodgers, and Captain Kent) threatened to deny an inmate the right to file a grievance or threatened disciplinary action against inmates who file grievances is sufficient to proceed. Brodheim v. Cry, 584 F.3d 1262, 1270 (9th Cir. 2009) ("[T]he mere threat of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect.")

Plaintiff's retaliation claim directed against others is too vague and conclusory. Plaintiff alleges that "many jail deput[i]es and supervisors" retaliated against plaintiff by placing him on "chain all movement" for several months and by charging him with undeserved disciplinary violations. However, because plaintiff provides no further details regarding these allegations, his retaliation claim as to these other individuals fails.

Therefore, the Court concludes that plaintiff has stated a retaliation claim only against Deputy Webb, Sergeant Reed, Sergeant Rodgers, and Captain Kent.

### 2. Right to Petition

Plaintiff also brings a First Amendment claim premised on (1) Deputy Webb's denial of a grievance form and (2) Sergeant Reed and Sergeant Rodgers's denial of the right to file a police report.

The First Amendment provides that Congress shall make no law abridging the right of the people "to petition the Government for redress of grievances." The right to petition the government is "cut from the same cloth" as the other guarantees in the First Amendment and is "an assurance of a particular freedom of expression." McDonald v. Smith, 472 U.S. 479, 482 (1985). However, the Petition Clause guarantees only that an individual may "speak freely and petition openly" and that he will be free from retaliation by the government for doing so. Smith v. Arkansas State Highway Employees, Local 1315, 441 U.S. 463, 464-65 (1979) (per curiam). The First Amendment does not guarantee that there will be any government response to a petition or that the government will take any action regarding the relief demanded by the petitioner.

1  Specifically, the First Amendment does not impose an affirmative obligation on the government
2  to consider, respond to, or grant any relief on a citizen's petition for redress of grievances. Id.; see
3  also Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999) ("A citizen's right to petition the
4  government does not guarantee a response to the petition or the right to compel government
5  officials to act on or adopt a citizen's views."); We the People Foundation, Inc. v. United States,
6  485 F.3d 140, 141 (D.C. Cir. 2007) ("[T]he Petition Clause does not provide a right to a response
7  or official consideration [of a citizen's grievance]."); Trentadue v. Integrity Committee, 501 F.3d
8  1215, 1237 (10th Cir. 2007) ("[T]he right to petition confers no attendant right to a response from
9  the government."); Hilton v. City of Wheeling, 209 F.3d 1005, 1007 (7th Cir. 2000) ("[W]hile the
10 government may not interfere with the right to petition, it need not grant the petition, no matter
11 how meritorious it is.") (internal citations omitted).

12 Plaintiff alleges that his right to file a grievance and a police report were hindered by
13 Deputy Webb, Sergeant Reed, and Sergeant Rodgers. The Court finds these allegations sufficient
14 to proceed as to these defendants.

15 **E. Fourteenth Amendment**
16 **1. Excessive Force**

17 Pretrial detainees are afforded greater protection under the constitution than prisoners.
18 Stone v. City of San Francisco, 968 F.2d 850, 857 n.10 (9th Cir. 1992). A pretrial detainee's right
19 to be free from excessive force comes from the Due Process Clause of the Fourteenth
20 Amendment and not the Eighth Amendment. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473
21 (2015). Unless the plaintiff demonstrates that the defendant intended to punish the inmate,
22 conditions or restrictions that are reasonably related to legitimate penological objectives do not
23 violate pretrial detainees' right to be free from punishment. See Block v. Rutherford, 468 U.S.
24 576, 584 (1984). Pretrial detainees must show that the defendant purposely or knowingly used
25 objectively unreasonable force. Kingsley, 135 S. Ct. at 2473.

26 Plaintiff accuses Deputy Webb of severely assaulting him without provocation and
27 without resistance. Because the allegations suggest that there was no legitimate penological
28

12

objective for the assault, plaintiff may proceed against this defendant on a Fourteenth Amendment excessive force claim.

### 2. Failure to Protect

Plaintiff also accuses Deputy Barnhart of entering the cell with Deputy Webb, witnessing the assault, and failing to intervene. "[T]he elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer are: (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries." Castro v. City of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016).

On review, the Court concludes that plaintiff's allegations state a failure to protect claim against Deputy Barnhart.

### 3. Use of Handcuffs

Next, plaintiff claims that Deputy Webb and Deputy Barnhart's handcuffing of him following the assault was an "unreasonable seizure" because it was intended only as "a show to other deputees [*sic*] that [plaintiff] had somehow resisted and therefore had to be cuffed."

The Due Process Clause protects pretrial detainees from the use of excessive force that amounts to punishment. Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). The Ninth Circuit has determined that the Fourth Amendment sets the "applicable constitutional limitations" for considering claims of excessive force during a pretrial detention. Pierce v. Multnomah County, 76 F.3d 1032, 1043 (9th Cir. 1996). Thus, though a pretrial detainee's excessive force claim arises under the Due Process Clause, the claim is appropriately analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham, 490 U.S. at 395. This standard "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing government interests at stake." Id. at 396, quoting United

States v. Place, 462 U.S. 696, 703 (1983)). When employing the balancing test, the court must pay "careful attention to the facts and circumstances in each particular case." Id.

Plaintiff here does not allege that the handcuffs applied to him were too tight or that they otherwise hurt him. Instead, he challenges the mere fact that they were used at all. But the officers' use of handcuffs following an altercation with a detainee—even one that plaintiff alleges he did not initiate or defend himself during—does not, without more, appear objectively unreasonable under the circumstances.

Accordingly, plaintiff fails to state a claim on these facts.

### 4. Falsified Incident Reports

Plaintiff alleges that Deputy Webb and Deputy Barnhart falsified Incident Reports following the September 28, 2017, assault. These reports were then relied on by the District Attorney to charge plaintiff with Resisting Executive Officers. As a result of this charge, plaintiff entered into a global plea deal that included the other charge(s) he had been fighting for the three years that he was detained at SCJ. Presumably, this global plea deal serves as the basis of his current incarceration. Plaintiff states that if he succeeds on this claim, he will "ask the court to order that his other cases be reopened for denial of due process."

In the criminal context and in the context of certain administrative proceedings, deliberately false allegations can give rise to a due process claim where there was a resulting deprivation of liberty. Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc) ("[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."); Costanich v. Dep't of Soc. & Health Servs., 627 F.3d 1101 (9th Cir. 2010) (denying summary judgment on a fabrication of evidence claim against a defendant based on evidence that the defendant falsified evidence that was used in an administrative proceeding, and which led to the revocation of Plaintiff's foster care license and loss of guardianship of two minor children); Chappell v. Bess, 2012 WL 3276984, at *22 (E.D. Cal. Aug. 9, 2012) ("The court finds that plaintiff has alleged the deprivation of a cognizable liberty interest based on his allegations that, as a result of defendants' alleged fabrication of evidence, plaintiff was subjected to unwarranted

disciplinary proceedings and criminal prosecution, and was retained in administrative segregation for more than two years, the latter, particularly if unwarranted, constituting an atypical and significant hardship...in relation to the ordinary incidents of prison life.") (alteration in original) (citation and internal quotation marks omitted)

"To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty. To establish the second element of causation, the plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the 'proximate cause' or 'legal cause' of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question." Spencer v. Peters, 857 F.3d 789, 798 (9th Cir. 2017) (citations omitted).

However, as a general rule, a claim that challenges the fact or duration of a prisoner's confinement should be addressed by filing a habeas corpus petition, while a claim that challenges the conditions of confinement should be addressed by filing a civil rights action. See Wolff v. McDonnell, 418 U.S. 539, 554 (1974); Preiser v. Rodriguez, 411 U.S. 475, 479 (1973) ("Release from penal custody is not an available remedy under the Civil Rights Act").

When a prisoner challenges the legality or duration of his custody or raises a constitutional challenge which could entitle him to an earlier release, his sole federal remedy is a writ of habeas corpus. Preiser, 411 U.S. at 500; Young v. Kenny, 907 F.2d 874 (9th Cir. 1990), cert. denied, 11 S. Ct. 1090 (1991). Moreover, when seeking damages for an allegedly unconstitutional conviction or imprisonment, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Heck v. Humphrey, 512 U.S. 477, 487-88 (1994). "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 488; Nettles v. Grounds, 830 F.3d 922,

933 (9th Cir. 2016) (en banc) ("[H]abeas corpus is the exclusive remedy to attack the legality of [a] conviction or sentence...."), cert. denied, ⎯⎯ U.S. ⎯⎯, 137 S. Ct. 645 (2017).

In this case, plaintiff seeks unspecified relief for the defendants' falsification of evidence that resulted in the filing of charges and his guilty plea. Insofar as he seeks damages, he has not shown that his conviction or guilty plea has been overturned or otherwise invalidated. As for injunctive relief, such as early release based on the alleged due process violations, that type of challenge does not state a claim under Section 1983. Instead, plaintiff must appeal the conviction through a writ of habeas corpus.

### 5. Processing of Grievances

Finally, as noted supra, any allegation that defendants failed to meaningfully investigate or respond to inmates' grievances does not state a claim because there is no constitutional right to a prison grievance system. Mann, 855 F.2d at 640; Ramirez, 334 F.3d at 860; Stewart. When a state does elect to provide a grievance mechanism, alleged violations of the procedures does not give rise to § 1983 claims.

Therefore, any allegations premised on the defendants' processing and investigation of his grievances is not cognizable.

### V. Conclusion

In addition to the aforementioned Monell claims against Shasta County and CFMG, plaintiff's first amended complaint states the following claims for relief: (1) a First Amendment retaliation claim against Deputy Webb, Sergeant Reed, Sergeant Rodgers, and Captain Kent; (2) a First Amendment right to petition claim against Deputy Webb, Sergeant Reed, and Sergeant Rodgers; (3) a Fourteenth Amendment excessive force claim against Deputy Webb; and (4) a Fourteenth Amendment failure to protect claim against Deputy Barnhart. None of the other claims are cognizable as plead.

Plaintiff will be granted an opportunity to file a second amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If plaintiff does not wish to amend, he may instead file a notice of voluntary dismissal, and the action then will be terminated by operation of law. Fed. R. Civ. P. 41(a)(1)(A)(i). Alternatively, plaintiff may forego amendment and notify the Court that he

wishes to stand on his first amended complaint. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may elect to forego amendment). If the last option is chosen, the undersigned will issue findings and recommendations to dismiss the non-cognizable claims without leave to amend, plaintiff will have an opportunity to object, and the matter will be decided by a District Judge.

If plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff should note that although he has been granted the opportunity to amend his complaint, it is not for the purposes of adding new and unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully review this screening order and focus his efforts on curing the deficiencies set forth above.

Finally, plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves a function in the case. Id. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly titled, in bold font, "First Amended Complaint," reference the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1. Within thirty days from the date of service of this order, plaintiff must file either a second amended complaint curing the deficiencies identified by the Court in this order, a notice of voluntary dismissal, or a notice of election to stand on the first amended complaint; and

////

2. If plaintiff fails to file a second amended complaint or notice of voluntary dismissal, the Court will recommend the action be dismissed, with prejudice, for failure to obey a court order and failure to state a claim.

Dated: May 4, 2020

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/DLB7;
DB/Inbox/Substantive/gibb2707.scrn 1AC