UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT A. GIBBS,<br><br>            Plaintiff,<br><br>     v.<br><br>J. WEBB, et al.,<br><br>            Defendants. | No.  2:18-cv-2817 JAM DB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, who was formerly detained at Shasta County Jail ("SCJ") in Redding, California, proceeds without counsel in this civil rights action filed under 42 U.S.C. § 1983. Defendants County of Shasta, Jessie Webb. Dave Kent, Casey Barnhart, Chase Reed, and Branden Rodgers ("Shasta County defendants") have filed a motion for partial summary judgment. (ECF No. 44.) For the following reasons, the undersigned recommends granting the motion for partial summary judgment.

**I. PROCEDURAL BACKGROUND**

Plaintiff filed the first amended complaint on August 7, 2019. (ECF No. 13.) After screening, this case proceeded on the following claims: (1) Monell claims against Shasta County and CFMG, (2) a First Amendment retaliation claim against Deputy Webb, Sergeant Reed, Sergeant Rodgers, and Captain Kent; (2) a First Amendment right to petition claim against Deputy Webb, Sergeant Reed, and Sergeant Rodgers; (3) a Fourteenth Amendment excessive

1

1  force claim against Deputy Webb; and (4) a Fourteenth Amendment failure to protect claim
2  against Deputy Barnhart. (ECF No. 18.)
3        On January 25, 2022, the Shasta County defendants filed the instant motion for partial
4  summary judgment, seeking adjudication only on the <u>Monell</u> claim against Shasta County and the
5  First Amendment right to petition claim against Deputy Webb, Sergeant Reed, and Sergeant
6  Rodgers. (ECF No. 44.) Plaintiff has opposed the motion. (ECF No. 50.)[1]

**II.  LEGAL STANDARDS FOR SUMMARY JUDGMENT**

      Summary judgment is appropriate when the moving party shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to obtain summary judgment, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." <u>In re Oracle Corp. Sec. Litig.</u>, 627 F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

      "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." <u>Oracle Corp.</u>, 627 F.3d at 387 (citing <u>Celotex</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56(c)(1)(B). Summary judgment should be entered "after adequate time for discovery and upon motion,

---

[1] Plaintiff's opposition does not specifically respond to defendants' statement of undisputed facts as required by Local Rule 260(b). "Pro se litigants must follow the same rules of procedure that govern other litigants." <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). Nevertheless, the court affords pro se litigants additional leniency, particularly in civil rights cases. See, e.g., <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1121 (9th Cir. 2012) (quoting <u>Hebbe v. Pliler</u>, 627 F.3d 338, 342 (9th Cir. 2010)). Accordingly, the court will consider the entire record.

1  against a party who fails to make a showing sufficient to establish the existence of an element
2  essential to that party's case, and on which that party will bear the burden of proof at trial."
3  Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the
4  nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

5  If the moving party meets its initial responsibility, the burden then shifts to the opposing
6  party to establish that a genuine issue as to any material fact does exist. Matsushita Elec. Indus.
7  Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence
8  of this factual dispute, the opposing party may not rely upon the allegations or denials of its
9  pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
10 admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P.
11 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in
12 contention is material, i.e., a fact "that might affect the outcome of the suit under the governing
13 law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific
14 Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e.,
15 "the evidence is such that a reasonable jury could return a verdict for the nonmoving party,"
16 Anderson, 447 U.S. at 248.

17 In the endeavor to establish the existence of a factual dispute, the opposing party need not
18 establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual
19 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
20 trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S.
21 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to
22 assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at
23 587 (citation and internal quotation marks omitted).

24 "In evaluating the evidence to determine whether there is a genuine issue of fact, [the
25 court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls
26 v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is
27 the opposing party's obligation to produce a factual predicate from which the inference may be
28 drawn. Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). The opposing party

3

"must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

## III.  EVIDENCE

### A. Verified Allegations in the First Amended Complaint

Plaintiff's first amended complaint is signed under the penalty of perjury. (ECF No. 13 at 5.) The allegations therein are considered as evidence in opposition to summary judgment to the extent they are based on plaintiff's personal knowledge of specific facts that are admissible in evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004). However, statements that are legal conclusions, speculative assertions, or statements of hearsay evidence do not satisfy the standards of personal knowledge, admissibility, and competence required by Federal Rule of Civil Procedure 56(c)(4). Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citations omitted).

#### 1. Allegations Pertaining to the Monell Claim

While housed as a pretrial detainee at SCJ from September 2015 through November 2018, plaintiff was denied access to grievance forms and had grievances denied at all levels by jail staff and administrators. (ECF No. 13 at 1.) Plaintiff and other inmates informed jail administrators of problems related to the grievance system, but no official action was taken to correct these issues. (Id. at 2.) Witnesses are rarely, if ever, interviewed; deputies accused of misconduct simply deny the misconduct; and deputies routinely "investigate" each other and make false statements to protect one another. (Id.) Supervisors do not meaningfully investigate or even respond to grievances, except to deny that any misconduct occurred. (Id.)

Plaintiff alleges the individual Shasta County defendants—Sergeant Reed, Sergeant Rodgers, and Captain Kent—encouraged the systematic denial of a meaningful grievance system by making derogatory remarks about grievances, threatening to suspend or deny grievance forms, threatening disciplinary action for filing grievances, and instituting policies deliberately designed to limit the number of grievance forms that could be obtained or filed. (ECF No. 13 at 1.)

Plaintiff alleges Shasta County failed to supervise its sheriff's department and has a policy to protect supervisors from liability by limiting their involvement in and presence during the actions of jail deputies. (ECF No. 13.) Plaintiff alleges Captain Dave Kent performed little or no supervision of inmates or jail staff and left most of the supervisory duties to Sergeant Chase Reed and Sergeant Brian Rodgers, who rarely left their offices, effectively leaving the jail deputies unsupervised at SCJ. (Id. at 1.) Plaintiff's letters and grievances sent to Sheriff Bosenko were simply referred back to the defendants at the jail. (Id. at 2.)

**2. Allegations Pertaining to First Amendment Right to Petition Claim**

On September 28, 2017, plaintiff complained verbally to jail deputies about jail conditions, including incidents of excessive force and abuse of inmates. (ECF No. 13 at 3-4.) Over the course of several hours, plaintiff asked Deputy Webb for a grievance form to submit his complaints on paper, but Deputy Webb ignored him, made derogatory remarks, and denied him the form. (Id.)

After Deputy Webb assaulted plaintiff later that day, [2] plaintiff asked jail deputies multiple times for an opportunity to file a police report with the Redding Police. (ECF No. 13 at 3-5.) The deputies declined, citing instruction from Sergeant Reed and Sergeant Rodgers. (Id.)

**B. Defendants' Evidence**

The Shasta County Sheriff's Office has formal policies and procedures in place for handling inmate grievances and complaints. (ECF 44-1, Undisputed Facts ("hereinafter UF") 2.) Policy Number 705, titled "Inmate Grievances," provides guidance to department members for inmate grievances. (UF 3-4.) The policy states grievances relating to any conditions of confinement will be handled at the lowest possible level, but that depending on the grievance, it could be handled by a higher authority. (UF 6). If an inmate is unsatisfied with the decision, they may take two levels of appeal, one of which will be reviewed by a sergeant, and the other by a lieutenant or captain. (UF 7-9.) This hierarchy is intended to prevent burdening high ranking

---

[2] This alleged assault underlies the basis for plaintiff's Fourteenth Amendment excessive force claim and failure to protect claim. The details of the alleged assault are not material to the claims on which the Shasta County defendants currently seek summary judgment.

command staff with grievances that can be resolved by a lower ranking staff member. (UF 20-22.)

All correctional deputies are required to complete training on Policy 705 and inmate grievance procedures. (UF 13.) All correctional employees have access to their training manuals to refer to the policy as needed. (UF 14-15.)

Grievance forms are widely available both from correctional deputies and in common areas. (UF 16-18.) Inmates also pass and receive forms to and from each other. (UF 19.)

Plaintiff filed two grievances related to the incident of September 28, 2017, both dated September 30, 2017, in which he stated he had been assaulted and was being denied grievance forms and the opportunity to file a police report. (UF 28; see also ECF No. 44-5 at 6-7.) Both grievances received responses. (Id.) In one response, plaintiff was provided with the mailing address and non-emergency phone number for the Redding Police Department. (Id. at 7.)

Plaintiff filed multiple grievances in which he complained he was being denied grievance forms. (ECF No. 44-4 at 2, 3, 8; No. 44-5 at 4, 10-12.) Several of these grievances are included in the record and were presented on SCJ grievance forms. (Id.) For example, on December 2, 2016, plaintiff filed a grievance stating he was regularly being denied access to grievance forms. (ECF No. 44-4 at 8.) In response, it was observed that plaintiff had filed 13 forms in a 30-day period; in addition, another form was attached with instruction for plaintiff to use it as needed. (Id.) In a grievance dated December 11, 2017, plaintiff alleged he was being denied his right to petition. (ECF No. 44-5 at 12.) A lieutenant reviewed the file and responded to the grievance, finding no evidence that any grievances had been unanswered. (Id.)

Exhibit B to defendants' motion for partial summary judgment contains 19 examples of plaintiff's use of the grievance process. (ECF Nos. 44-4, 44-5.) According to a sworn declaration by Lieutenant Dale Marlar, these are among "the hundreds of requests for information and grievances filed by Plaintiff Gibbs during his incarceration." (ECF No. 44-2 at ¶ 14.)

**IV. DISCUSSION**

In opposition to defendants' motion for partial summary judgment, plaintiff argues summary judgment should be denied based on the verified allegations of the first amended

6

complaint. (ECF No. 50 at 2-3.) Accordingly, defendants' facts set not fairly disputed by plaintiff's verified allegations are deemed to be undisputed.

### A. Monell Claim

A local government is liable for an injury under § 1983 under three possible theories. See Clouthier v. County of Contra Costa, 591 F.3d 1232, 1249 (9th Cir. 2010), overruled on other grounds by Castro v. Cty. of Los Angeles, 833 F.3d 1060 (9th Cir. 2016) (*en banc*)). First, a local government may be liable if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). Second, a local government can fail to train employees in a manner that amounts to "deliberate indifference" to a constitutional right, such that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 390 (1989). Third, a local government may be held liable if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1097 (9th Cir. 2013) (internal quotation marks and citation omitted).

A local government entity cannot be held liable under § 1983 for the acts of its employees based on a theory of respondeat superior. Ulrich v. City & County of San Francisco, 308 F.3d 968, 984 (9th Cir. 2002). "Liability may attach to a municipality only where the municipality itself causes the constitutional violation through execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Id. (internal quotation marks omitted). Such a policy or custom may include a policy or custom of inaction, if "such inaction amounts to a failure to protect constitutional rights" and results from a conscious, or deliberate choice "made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject

////

matter in question." Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001) (internal citation and quotation marks omitted).

Plaintiff's Monell claim is premised on Shasta County's alleged failure to supervise the Sheriff's Department pertaining to the jail staff refusing to provide grievance forms, making threats, engaging in retaliatory conduct when inmates and detainees ask for the forms, and not meaningfully investigating or responding to grievances, except to deny that any misconduct occurred. To prevent summary judgment, plaintiff must put forth evidence that the alleged conduct occurred pursuant to a governmental policy or custom. See Ulrich, 308 F.3d at 984.

Plaintiff's evidence does not show the alleged deprivations occurred pursuant to a governmental policy or custom. Aside from plaintiff's conclusory allegations, the record contains no evidence that jail deputies lacked adequate supervision. There is no evidence of a policy or widespread practice designed to limit the number of grievance forms that could be obtained or filed. Plaintiff presents no specific examples of grievances not meaningfully investigated or not provided responses. Moreover, the record before the court refutes plaintiff's allegation that grievances were uniformly denied.

Although plaintiff's verified allegations were liberally construed and found sufficient to state a claim for screening purposes, the same allegations do not suffice to prevent partial summary judgment. As to Shasta County's Monel liability for the constitutional deprivations alleged in the amended complaint, plaintiff fails to raise triable issues of fact. See Federal Rule of Civil Procedure 56(c)(4); Soremekun, 509 F.3d at 984. Accordingly, summary judgment should be entered in favor of the Shasta County defendants on the Monell claim.

**B. First Amendment Right to Petition Claim**

Plaintiff brings a First Amendment right to petition claim against Deputy Webb, Sergeant Reed, and Sergeant Rodgers. Plaintiff alleges Deputy Webb denied him a grievance form on September 28, 2017, and Sergeant Reed and Sergeant Rodgers denied him his right to petition the police on or after the same day.

The First Amendment protects an individual's freedom of speech and right to speak freely and right to petition the government for redress of grievances. Smith v. Arkansas State Highway

1  Emp., Loc. 1315, 441 U.S. 463, 464 (1979) (per curiam). It guarantees an individual may "speak
2  freely and openly" and be free from retaliation by the government for doing so. Id. at 464-65. The
3  First Amendment does not, however, impose an affirmative obligation on the government to
4  consider, respond to, or grant any relief on a citizen's petition for redress of grievances. Smith,
5  441 U.S. at 464-65. Prisoners have a First Amendment right to petition that includes a right of
6  access to the courts and to pursue available prison administrative remedies. O'Keefe v. Van
7  Boening, 82 F.3d 322, 325 (9th Cir. 1996).

8  Unconstitutional restrictions on the right to petition may arise from the deterrent, or
9  "chilling," effect of governmental action. O'Keefe v. Van Boening, 82 F.3d 322, 325 (9th Cir.
10 1996) To have such an effect, the government action must be regulatory, proscriptive, or
11 compulsory in nature, and the complainant must be either presently or prospectively subject to the
12 regulations, proscriptions, or compulsions that he or she is challenging. Id. (citing Laird v. Tatum,
13 408 U.S. 1, 11 (1972)). Further, an unconstitutional chill will only exist if the government action
14 has injured the individual or places the individual in immediate danger of sustaining a direct
15 injury. O'Keefe, 82 F.3d at 325 (citing Laird, 408 U.S. at 11).

16 Here, plaintiff claims Deputy Webb denied him a grievance form or forms on September
17 28, 2017, but plaintiff filed at least two grievances, both dated September 30, 2017, regarding the
18 alleged events of September 28, 2017. (UF 28; ECF No. 44-5 at 6-7.) It is therefore undisputed
19 that plaintiff availed himself of his right to petition for redress regarding the alleged assault
20 through the administrative grievance procedure. (Id.) That his appeals were denied does not mean
21 he was denied the right to petition. See Smith, 441 U.S. at 464-65.

22 Plaintiff also had a First Amendment right to petition the police. California Motor Transp.
23 Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972) ("the right to petition extends to all
24 departments of the Government"). However, he presents no evidence he was denied this right,
25 either directly, or through an unconstitutional chilling effect.

26 There exists no specific right to file a written police report; instead, the right at issue is the
27 right to petition the police department, which could be done orally or in writing. See Pearson v.
28 Welborn, 471 F.3d 732, 741 (7th Cir. 2006) (prisoner's oral complaints to prison officials were

protected First Amendment activity under the Petition Clause because the particular form of expression—i.e., written or oral—does not dictate whether constitutional protection attaches). It is undisputed that plaintiff had open avenues to contact the police to seek redress for the alleged assault. Specifically, plaintiff was provided with the mailing address and the non-emergency phone number for the Redding Police Department in response to one of his grievances dated September 30, 2017. (ECF No. 44-5 at 6-7.) In addition, on at least one prior occasion, plaintiff had been informed in response to a different grievance how to petition the police department. (ECF No. 44-4 at 6.) On that occasion, plaintiff was informed that if he wanted to make a report to the police, then he could place a phone call from his housing unit to the police or he could write a letter to the police department (Id.) Plaintiff presents no evidence that either of these avenues of contacting the police were unavailable to him, or that Sergeant Reed or Sergeant Rodgers interfered with plaintiff's attempt use them. Thus, there is no genuine dispute of material fact for trial on the First Amendment right to petition claims.

## VI. CONCLUSION AND RECOMMENDATION

In accordance with the above, IT IS RECOMMENDED:

1. Defendants' motion for partial summary judgment (ECF No. 44) be GRANTED in that summary judgment be entered in favor of County of Shasta on plaintiff's Monell claim, and in favor of defendants Sergeant Reed and Sergeant Rodgers on plaintiff's First Amendment right to petition claim; and

2. This case proceed only on the following claims: (1) Monell claim against CFMG; (2) First Amendment retaliation claim against Deputy Webb, Sergeant Reed, Sergeant Rodgers, and Captain Kent; (3) Fourteenth Amendment excessive force claim against Deputy Webb; and (4) Fourteenth Amendment failure to protect claim against Deputy Barnhart.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

objections shall be filed and served within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 27, 2022

DLB7
gibb2817.msj

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE